IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No.  10-cv-00157-REB-BNB

PHILIP B. MORGAN,

Plaintiff,

v.

CITY AND COUNTY OF DENVER,

Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

This matter arises on **Defendant's Motion for Summary Judgment** [Doc. # 28, filed 11/5/2010] (the "Motion for Summary Judgment").  I respectfully RECOMMEND that the Motion for Summary Judgment be GRANTED.

## I.  FACTS

The plaintiff is a Seventh Day Adventist Christian.  Response [Doc. # 36] at p. 1.  His faith precludes him from working on the Sabbath, which is Saturday.  Id.

The plaintiff was hired on April 1, 2004, as an Administrative Support Assistant (ASA III) for the Denver Police Department's Records Bureau.  Ex. A-2 [Doc. # 28-2] at p. 2.  The defendant was aware of the plaintiff's religious beliefs, including that he would not work on Saturdays, at the time he was hired.  Ex. A-4 [Doc. # 28-4] at p. 77 line 20 through p. 78 line 17.  From April 2004 through December 2007, the plaintiff and a co-worker (Kevin Carlheim) agreed that the plaintiff would receive Fridays and Saturdays off and Mr. Carlheim would receive Sundays and Mondays off.  Ex. A-1 [Doc. # 28-1] at Vol. 3, p. 24 lines11-16.  The defendant

allowed the arrangement and, in that way, accommodated the plaintiff's request not to work on Saturdays.[1]

In 2006 through 2007, the Records Bureau was reorganized.  Ex. A-1 [Doc. # 28-1] at p. 43 lines 4-18.  Part of the reorganization was to merge three departments--data, pawn, and auto theft records.  Ex. A-7 [Doc. # 28-7] at p. 186 lines 16-20.  In addition, the Records Bureau began to operate 24 hours per day, seven days per week.  Id. at p. 186 lines 1-9.  The transition to a 24/7 operation (the "Transition") occurred on approximately December 30, 2007.  Id. at p.196 line 22 through p. 197 line 9.

The Records Bureau used a seniority system to schedule work shifts, days off, and vacations.  Ex. A-1 [Doc. # 28-1] at p. 45 lines 2-4; Ex. 4 [Doc. # 28-4] at p. 77 line 2 through p. 78 line 8.  Beginning in December 2007, the plaintiff  through the application of the seniority system was assigned Saturday shifts, which he refused to work based on his religion.  Complaint [Doc. # 3] at p. 3.  At approximately the same time, the plaintiff requested a permanent religious accommodation of Saturdays off.  Ex. A-17 [Doc. # 28-17].  The defendant refused the plaintiff's request for permanent Saturdays off.  Ex. A-25 [Doc. # 28-25].  Instead, the defendant offered the following accommodations:

---

[1]His religious beliefs notwithstanding, the plaintiff did work on some Saturdays when Mr. Carlheim was not available due to vacations or otherwise.  Ex. A-4 [Doc. # 28-4] at p. 78 lines 5-21.

> • Continue to vote for Saturdays off every period.  All schedule
> requests are based on seniority.
> • Ask a co-worker to switch/trade days off.
> • Work with Human Resources to find another ASA3 position in
> another agency which could provide a schedule with Saturdays
> off.

Ex. A-25 [Doc. # 28-25].

The plaintiff's employment was terminated effective August 4, 2008, based on his

unauthorized absences from work.  Ex. A-33 [Doc. # 28-33] at p. 1.  The letter terminating the

plaintiff's employment identified 14 Saturdays in March through June 2008 on which the

plaintiff failed to report for work.  Id. at p. 4.

## II. LEGAL STANDARD

The plaintiff is proceeding *pro se*, and his pleadings must be liberally construed.  Haines

v. Kerner, 404 U.S. 519, 520-21 (1972).  The court cannot act as an advocate for a *pro se*

litigant, however, and he must comply with the fundamental requirements of the Federal Rules

of Civil Procedure.

Construing the Complaint liberally, the plaintiff appears to assert three claims.  Two

claims sound under Title VII of the Civil Rights Act of 1964--religious discrimination (failure to

accommodate) and retaliation.  The plaintiff asserts a third claim for breach of contract.

In ruling on the defendant's Motion for Summary Judgment, the facts must be viewed in

the light most favorable to the plaintiff, who is opposing the motion, and the plaintiff must be

afforded the benefit of all reasonable inferences to be drawn from the evidence.  Adickes v. S.H.

Kress & Co., 398 U.S. 144, 157 (1970).  Rule 56(c), Fed. R. Civ. P., provides that summary

judgment should be rendered "if the pleadings, the discovery and disclosure materials on file,

and any affidavits show that there is no genuine issue as to any material fact and that the movant

is entitled to judgment as a matter of law."  A genuine issue of material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Title VII makes it "an unlawful employment practice for an employer . . . to discharge

any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's . . .

religion. . . ."  42 U.S.C. § 2000e-2(a)(1).  "Religion" is defined to include only those "aspects of

religious observance and practice" that an employer is able to "reasonably accommodate . . .

without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

A separate section of Title VII prohibits an employer from discriminating against an

employee because that individual has "opposed any practice" made unlawful by the Act or

"made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation.  42

U.S.C. § 2000e-3(a).

In Thomas v. National Association of Letter Carriers, 225 F.3d 1149, 1155 (10th Cir.

2000), a case involving allegations of religious discrimination by an employer, the Tenth Circuit

Court of Appeals applied the familiar burden shifting approach set forth in McDonnell Douglas

Corp. v. Green , 411 U.S. 792 (1973), stating:

> To survive summary judgment on a religious discrimination claim
> of failure to accommodate, the employee initially bears the burden
> of production with respect to a prima facie case.  The employee
> must show that (1) he or she had a bona fide religious belief that
> conflicts with an employment requirement; (2) he or she informed
> his or her employer of this belief; and (3) he or she was fired for
> failure to comply with the conflicting employment requirement. . .
> .
>
> The burden then shifts to the employer to (1) conclusively rebut

> one or more elements of the plaintiff's prima facie case, (2) show
> that it offered a reasonable accommodation, or (3) show that it was
> unable reasonably to accommodate the employee's religious needs
> without undue hardship.

The phrases "reasonably accommodate" and "undue hardship" in this context "are relative terms and cannot be given any hard and fast meaning.  Each case necessarily depends upon its own facts and circumstances, and in a sense every case boils down to a determination as to whether the employer has acted reasonably."  United States v. City of Albuquerque, 545 F.2d 110, 114 (10th Cir. 1976).

To prove a Title VII retaliation claim:

> [A] plaintiff must demonstrate (1) that he engaged in protected
> opposition to discrimination, (2) that a reasonable employee would
> have found the challenged action materially adverse, and (3) that a
> causal connection existed between the protected activity and the
> materially adverse action.  Once the plaintiff has made out a prima
> facie case, the employer must articulate a legitimate,
> nondiscriminatory reason for the adverse employment action.  If
> the employer articulates a legitimate reason for the action, then the
> plaintiff must demonstrate that the employer's asserted reasons are
> pretextual.

Pinkerton v. Colorado Dept. of Transportation, 563 F.3d 1052, 1064 (10th Cir. 2009)(internal quotation and citations omitted).

## III.  ANALYSIS

### 1.  The Defendant Offered a Reasonable Accommodation

In this case, the defendant concedes for purposes of the Motion for Summary Judgment that the plaintiff can meet the *prima facie* elements of religious discrimination.  Motion for Summary Judgment [Doc. # 28] at p. 3.  The defendant acknowledges that "the burden then shifts to [d]efendant."  Id.

The circuit court in <u>Thomas</u> relied on <u>United States v. City of Albuquerque</u> and held:

> [A]n employer had done all that was reasonably required under 42
> U.S.C. § 2000e-2 once it had encouraged the employee to try to
> find another employee to swap shifts with him so that he could
> avoid working on Saturdays in violation of his religious beliefs.
> We held that it would have been unreasonable to require the
> employer to go further and attempt to arrange a schedule swap for
> the plaintiff. . . .  [T]he employer had done all that was reasonably
> required of it when it was amenable to, and receptive to, efforts
> that the employee could have conducted for himself to arrange his
> own schedule swap.

<u>Thomas</u>, 225 F.3d at 1157, citing <u>United States v. City of Albuquerque</u>, 545 F.2d 110 (10th Cir.

1976).

The defendant offered exactly that accommodation here.  In particular, on April 10, 2008,

the plaintiff was informed:

> You presented [at a meeting on March 17, 2008,] the reason for
> your absences on Saturdays and asked for a schedule change.
> Your statement was given full consideration before a decision was
> made.  However, due to the 24 hour operational needs of the
> Bureau, we are not able to grant this request.  Although we suggest
> that you consider the following options:
>
> • Continue to vote for Saturdays off every period.  All schedule
> requests are based on seniority.
> • **Ask co-workers to switch/trade days off.**
> • Work with Human Resources to find another ASA3 position in
> another agency which could provide a schedule with Saturdays off.

Ex. A-25 [Doc. # 28-25] (emphasis added).

Significantly, the plaintiff had successfully arranged days off with Kevin Carlheim

during the period from April 2004 through December 2007 as a means of accommodating his

6

religious beliefs.[2]  After the Transition, however, the plaintiff generally refused to attempt to

trade shifts as an accommodation,[3] and testified:

> Q:      What did you mean in the second paragraph [of an e-mail
> to his supervisor] when you wrote, I am determined that I will not
> sell the truth even at the cost of your disciplinary actions?
>
> A:      That I was never to go against my religious belief and
> convictions.
>
> Q:      So you would never work--
>
> A:      Conscience, to me, is very important.  It's a dangerous
> thing to go against your conscience.  I was not going to violate
> God's commandment because God's commandment to me is above
> every other commandment.  It comes first.  That's why, before I
> was hired, I made my--I let them know about it, that the Sabbath
> observance was very important to me because God institute it from
> creation and said it was His holy day.
>
> Q:      Did you mean that any amount of discipline would not
> make you work on Saturdays?
>
> A:      In my mind I'm convicted beyond all reasonable doubt, it
> will never happen again.  I have--I did a favor and I'm being--I
> was asked to do a favor, and just because I decided to do a favor,
> look what's happening to me.  We are here because of that.  So,

---

[2]After the Transition, Cathy McLane was an employee with seniority intervening between Mr. Carlheim and the plaintiff. Ex. A-10 [Doc. # 28-10]; Ex. A-7 [Doc. # 28-7] at p. 252 line 24 through p. 253 line 20.  Unrebutted evidence establishes that the defendant required the plaintiff to clear any trades with Ms. McLane, but she did not object. Ex. A-7 [Doc. # 28-7] at p. 253 lines 16-20

[3]Unrebutted evidence establishes that "a couple of trades" between Mr. Carlheim and the plaintiff were approved in 2008. Ex. A-7 [Doc. # 28-7] at p. 252 line 24 through p. 253 line 2. During part of 2008, however, Mr. Carlheim suffered health issues, was "not in the mix of voting days off," and was not able to trade days off with the plaintiff. Ex. A-8 [Doc. # 28-8] at p. 63 line 23 through p. 64 line 4.  In addition,  immediately following the Transition, Mr. Carlheim did not have adequate seniority to obtain Saturdays off. Ex. A-17 [Doc. # 28-17] (noting that the plaintiff "does not have the seniority to vote Saturdays off, nor does the employee that he previously was able to trade with").

yes, my mind is made up.  I'm convicted I will never do it again.[4]

Q:    You will never work a Saturday again?

A:    Never, ever.  God forbid.

                           \*    \*    \*

Q:    So you knew that the Records Bureau could not give you Saturdays off because of operational changes, correct?

A:    That's what they said.  How can I fight that?  That's--that's what they explained.

Q:    So it was not about discriminating against you for your religious practices, was it?

A:    It was because there was a way--there was a way--there was a way we could have worked that out, but I suggested workable ways at the predisciplinary hearings, and they turned it--they rejected those.

Q:    So you suggested having a permanent Saturday off, correct?

A:    Yes.

Q:    And you suggested changing up the schedule and the shifts that had been six months in the planning, correct?

A:    Yes, isn't that what accommodation is all about?  Making changes to accommodate you?  The--you have to make change--changes to accommodate someone.  That's what it's all about.  As far as I understand the word, accommodation, that's what you do, to accommodate.

---

[4]The plaintiff's "favor" is more fully explained in the Response [Doc. # 36]:

> Defendant hired me and made arrangements that accommodated my religious belief.  Defendant then asked me to fill in for Kevin Carlheim on Saturdays when he takes his vacation, as a favor, because the bureau did not have any employee available to fill in those shifts.

Response [Doc. # 36] at p. 2.

Q:      Are you aware that the law doesn't require an employer to give you the accommodation you want?

A:      No.

Q:      Are you aware that an employer can offer you an accommodation, and that's all they have to do?

A:      I was never offered one.

Q:      What about trading days off?  You don't think of that as accommodation--

A:      No, that's--

Q:      --that allows you to have Saturdays off?

A:      No, that's telling me you are on your own.  You make your own arrangements.  That's not my employer accommodating me.

Ex. A-1 [Doc. # 28-1] at p. 118 line 22 through p. 119 line 20; p. 121 line 17 through p. 122 line 24.

Here, as in City of Albuquerque, the defendant made a reasonable accommodation--an accommodation which previously had met the plaintiff's religious needs.  By trading shifts, the plaintiff would suffer no loss in pay, discipline, or other disadvantage.  But after the Transition, the plaintiff refused this accommodation.  He wanted Saturdays off as a matter of right.[5]  This

---

[5]The plaintiff explained his change in position as follows:

The reorganization rather than prohibiting the free exercise of my religion actually created more room for the Bureau to continue the existing accommodation I was given me [sic] when I was hired.  Not only had the reorganization added another shift but more employees to work the Saturday shift where there was only one employee before.

Response [Doc. # 36] at p. 2.  The plaintiff apparently reasons that with more employees working for the Records Bureau, it could assign others to work Saturdays so that the plaintiff

the defendant was not required to do.  <u>City of Albuquerque</u>, 545 F.2d at 114.

Significantly, after the Transition the plaintiff received his first choice in shift assignments and was placed on Detail 3.  Ex. A-1 [Doc. 28-1] at p. 54 line 7 through p. 55 line 6 (where the plaintiff testified that his first choice was Detail 3 because "[t]hat's what suited me. . . ."); Ex. A-13 [Doc. # 28-13](showing the schedule for Detail 3).  That Detail allowed the plaintiff to work his preferred hours, from 2:00 p.m. to 10:00 p.m., but it also required that he work on Saturdays.  Ex. A-13 [Doc. # 28-13].  Mr. Carlheim, with whom the plaintiff previously had been able to arrange shifts to avoid working on Saturdays, also was required under the new schedule to work on Saturdays.  <u>Id.</u>  <u>See</u> Ex. A-17 [Doc. # 28-17] (noting that the plaintiff "does not have the seniority to vote Saturdays off, nor does the employee that he previously was able to trade with").

The plaintiff complains that Rachel Fain, an employee with less seniority than he, was awarded Saturdays off, while the plaintiff was not.  Complaint [Doc. # 3] at p. 3.  Unrebutted evidence establishes, however, that Ms. Fain was given Saturdays off because she had special training, and her schedule was adapted temporarily to meet the department's staffing needs.  Ex. A-7 [Doc. # 28-7] at p. 200 lines 11-23; p. 193 line 1 through p. 195 line 20; p. 214 line 24 through p. 215 line 1; page 221 line 16 through p. 222 line 7; page 242 lines 7-14; Ex. A-8 [Doc.

_____

would not be required to.  As the defendant points out in the Motion for Summary Judgment, however:

> Reasonable accommodation does not mean that an employer must deny the shift and job preference of some employees in order to accommodate or prefer the religious needs of another.

<u>Lee v. ABF Freight System, Inc.</u>, 22 F.3d 1019, 1023 (10th Cir. 1994)(internal quotation and citation omitted).

# 28-2] at p. 62 lines 14-17; and Ex. A-17 [Doc. # 28-17](noting that "[v]oting for shifts and days off is conducted by seniority along with training issues that must be addressed until the transition is completed").[6]

The unrebutted evidence demonstrates that the defendant reasonably accommodated the plaintiff's religious needs by allowing him to vote for Saturdays off based on his seniority and to trade days off with other employees.

### 2.  The Defendant Did Not Retaliate

The defendant concedes for purposes of the Motion for Summary Judgment that the plaintiff can meet the *prima facie* elements of retaliation.  Motion for Summary Judgment [Doc. # 28] at p. 19.  The defendant acknowledges that it bears the burden to "articulate a legitimate, nondiscriminatory reason for the adverse employment action.  If the employer articulates a legitimate reason for the action, then the plaintiff must demonstrate that the employer's asserted reasons are pretextual."  Pinkerton, 563 F.3d at 1064.

The defendant contends that the plaintiff's employment was terminated for absenteeism.  Motion for Summary Judgment [Doc. # 28] at p. 19.  In particular, the defendant's Career Services Rule 16-60(S) provides that unauthorized absence from work is grounds for discipline or dismissal.  Ex. A-33 [Doc. # 28-33] at p. 1.  In its termination letter, the defendant cited 14 Saturdays during which the plaintiff was scheduled to work but failed to appear, without authorization.

---

[6]By August 2008, training had been sufficiently completed so that the Records Bureau could return to staffing based entirely on a seniority system, and the special needs fulfilled by Ms. Fain (and others) no longer existed.  Ex. A-7 [Doc. # 28-7] at p. 198 lines 13-18; p. 227 lines 5-14.

The defendant has shown a legitimate, nondiscriminatory reason for terminating the plaintiff's employment.  The plaintiff has failed to come forward with any evidence of pretext.

<u>3.  Any Agreement To Give Plaintiff Saturdays Off Is Unenforceable</u>

The plaintiff alleges the existence of an "agreement when the Plaintiff was hired that gave Plaintiff time off to observe the Holy Sabbath day in accommodation of his religious belief and practice. . . ."  Scheduling Order [Doc. # 20] at p. 2.  The plaintiff acknowledges that the alleged agreement was "verbal in this case" and asserts that it was "supported by the actions of both Plaintiff and Defendant until December, 2007."  Response [Doc. # 36] at p. 2.

Section 38-10-112, C.R.S., which is the Colorado statute of frauds, provides in relevant part:

> (1)  Except for contracts for the sale of goods which are governed by section 4-2-201, C.R.S., and lease contracts which are governed by section 4-2.5-201, C.R.S., in the following cases every agreement shall be void, unless such agreement or some note or memorandum thereof is in writing and subscribed by the party charged therewith:
>
> (a)  Every agreement that by the terms is not to be performed within one year after the making thereof. . . .

The agreement to accommodate alleged by the plaintiff was for a permanent accommodation and was not to be performed within one year of its making.  Consequently, it is subject to the statute of frauds.  The plaintiff acknowledges that the agreement is not in writing and has failed to allege or identify any note or memorandum of the agreement signed by the defendant.  The alleged oral agreement is therefore void under the statute of frauds.

Nor does the alleged partial performance of the accommodation by the defendant for several years render it enforceable.  For example, in <u>Chidester v. Eastern Gas and Fuel</u>

Associates, 859 P.2d 222, 224 (Colo. App. 1992), the Colorado Court of Appeals held that an oral contract purportedly assuring employment for a period of years was void under the statute of frauds, stating that "neither the partial performance of services nor the payment of compensation will be deemed sufficient to avoid the bar of the statute as to enforcement of the entire contract."

The oral agreement for a permanent accommodation in the form of Saturdays off, if it existed at all, is unenforceable under the Colorado statute of frauds.

## IV.  RECOMMENDATION

I respectfully RECOMMEND that the Motion for Summary Judgment [Doc. # 28] be GRANTED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.   A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dept. of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated December 29, 2010.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge